**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
ELKINS**

**CAMERON HORNE**,

       Plaintiff,

**v.**                                              **CIVIL ACTION NO. 2:18-CV-119
(BAILEY)**

**WARDEN JOSEPH COAKLEY**, **et al.**,

       Defendants.

## ORDER GRANTING MOTION TO DISMISS OR FOR SUMMARY JUDGMENT

On this day, the above-styled matter came before this Court for consideration of defendants' Motion to Dismiss or for Summary Judgment [Doc. 54], filed November 25, 2019.  Having been fully briefed, this matter is now ripe for decision.  For the reasons set forth below, the Motion will be granted.

## BACKGROUND

Plaintiff was sentenced in the United States District Court for the Eastern District of Tennessee to a 72-month term of imprisonment for bank robbery.  Plaintiff was incarcerated at USP Hazelton from April 18, 2016, through May 11, 2018, during which time the incident giving rise to plaintiff's **Bivens** Complaint took place.

Plaintiff's Complaint states that on March 20, 2017, he blocked the window of his special housing unit ("SHU") cell in an attempt to compel USP Hazelton staff to remove him from his cell. See [Doc. 1-1 at 8].  Plaintiff claims he was injured by USP Hazelton staff while they were escorting him back to his cell, specifically alleging that the staff "slammed [his] head on the floor, splitting [his] forehead open and making [him] bleed profusely."  [Id.]

1

Plaintiff alleges continuing physical complications and emotional distress, and requests monetary damages in the amount of $150,000.  *See* [Doc. 1 at 9].

Defendants argue that plaintiff's Complaint must be dismissed for the following reasons: (1) plaintiff failed to exhaust his administrative remedies; (2) even if plaintiff had exhausted is administrative remedies, his claims are not cognizable in a ***Bivens*** lawsuit; (3) even if plaintiff's claims were cognizable in a ***Bivens*** lawsuit, plaintiff has not adequately pled and cannot support a cognizable legal claim; and (4) defendants are entitled to qualified immunity.  *See* [Doc. 55 at 6-22].  Plaintiff's response[1] mainly just recounts his version of the events that took place on March 20, 2017.  *See* [Doc. 58-1 at 1–3].  Plaintiff also states that he "ha[s] filed all the administrative remedies."  [Id. at 1].

## LEGAL STANDARDS

### A. Motion to Dismiss — Rule 12(b)(1)

A party may move to dismiss an action for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).  The burden of proving subject matter jurisdiction on a Rule 12(b)(1) motion to dismiss is on the party asserting federal jurisdiction.  A trial court may consider evidence by affidavit, deposition, or live testimony without converting the proceeding to one for summary judgment.  ***Adams v. Bain***, 697 F.2d 1213, 1219 (4th Cir. 1982); ***Mims v. Kemp***, 516 F.2d 21 (4th Cir. 1975).  Because the court's very power to hear the case is at issue in a Rule 12(b)(1) motion, the trial court is free to weigh the evidence to determine the existence of its jurisdiction.  No presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not

---

[1] Plaintiff's response is titled "Motion to Proceed or for Summary Judgment" [Doc. 58].

preclude the trial court from evaluating for itself the merits of jurisdictional claims.  *See Materson v. Stokes*, 166 F.R.D. 368, 371 (E.D. Va. 1996).  Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.  *See* Fed. R. Civ. P. 12(h)(3).

**B. Motion to Dismiss — Rule 12(b)(6)**

A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (applying the *Twombly* standard and emphasizing the necessity of *plausibility*).  When reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must assume all of the allegations to be true, must resolve all doubts and inferences in favor of the plaintiffs, and must view the allegations in a light most favorable to the plaintiffs.  *Edwards v. City of Goldsboro,* 178 F.3d 231, 243–44 (4th Cir. 1999).

When rendering its decision, the Court should consider only the allegations contained in the Complaint, the exhibits to the Complaint, matters of public record, and other similar materials that are subject to judicial notice.  *Anheuser-Busch, Inc. v. Schmoke,* 63 F.3d 1305, 1312 (4th Cir. 1995), *vacated on other grounds*, 517 U.S. 1206 (1996).  In *Twombly*, the Supreme Court, noting that "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," *id*. at 1964–65, upheld the dismissal of a complaint where the plaintiffs did not "nudge[ ] their claims across the line from conceivable to plausible."  *Id*. at 1974.

3

**C. Motion for Summary Judgment — Rule 56**

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If the moving party meets this burden, the nonmoving party "may not rest upon the mere allegations or denials of its pleading, but must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Additionally, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586. That is, once the movant has met its burden to show absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial. Fed.

4

R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 323–25; *Anderson*, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted). Although all justifiable inferences are to be drawn in favor of the non-movant, the non-moving party "cannot create a genuine issue of material fact through mere speculation of the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). Further, "the plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

## APPLICABLE LAW

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires that inmates exhaust available administrative remedies prior to filing civil actions, even though the administrative process may not afford them the relief they might obtain through civil proceedings.[2] *Woodford v. Ngo*, 548 U.S. 81 (2006); *Porter v. Nussle*, 534 U.S. 516, 532 (2002) ("[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."); *Booth v. Churner*, 532 U.S. 731, 731 (2001) ("Under 42 U.S.C. § 1997e(a), an inmate seeking only money damages must complete any

---

[2] 42 U.S.C. § 1997e(a) provides the following: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

prison administrative process capable of addressing the inmate's complaint and providing some form of relief, even if the process does not make specific provision for monetary relief.").  Exhaustion of administrative remedies is also required when injunctive relief is requested. *Goist v. United States Bureau of Prisons*, 2002 WL 32079467, at *4 n.1 (D.S.C. Sept. 25, 2002) (Herlong, J.).  "[A] court may not excuse a failure to exhaust" because the PLRA's mandatory exhaustion scheme "foreclose[s] judicial discretion." *Ross v. Blake*, 136 S.Ct. 1850, 1856–57 (2016) ("[A] court may not excuse a failure to exhaust, even to take [special circumstances] into account.").  But the plain language of the statute requires that only "available" administrative remedies be exhausted. *Id.* at 1855 ("A prisoner need not exhaust remedies if they are not 'available.'").  In *Ross*, the Supreme Court set forth three scenarios where the administrative process is considered "unavailable": (1) the administrative process "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) the administrative process is so opaque that no ordinary prisoner can discern or navigate through the process; and (3) the "administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation or intimidation." *Id.* at 1859–60.

If an inmate exhausts administrative remedies with respect to some, but not all, of the claims he raises in a section 1983, *Bivens*, or Federal Tort Claims Act action, the Court must dismiss the unexhausted claims and proceed with the exhausted ones. *See Jones v. Bock*, 549 U.S. 199, 201 (2007) ("The PLRA does not require dismissal of the entire complaint when a prisoner has failed to exhaust some, but not all, of the claims included

in the complaint. . . .  If a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad.").  It appears to be the majority view as well that exhausting administrative remedies after a complaint is filed will not save a case from dismissal.  *See **Neal v. Goord**,* 267 F.3d 116, 121–22 (2d Cir. 2001) (citing numerous cases) (overruled on other grounds).  The rationale is pragmatic.  As the court stated in ***Neal**,* allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court.  Moreover, if during the pendency of a suit, the administrative process were to produce results benefitting plaintiff, the federal court would have wasted its resources adjudicating claims that could have been resolved within the prison grievance system at the outset.  *Id.* at 123.  In ***Freeman v. Francis**,* 196 F.3d 641, 645 (6th Cir. 1999), the court stated: "The plain language of the statute [42 U.S.C. § 1997e(a)] makes exhaustion a precondition to filing an action in federal Court. . . .  The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit."  Thus, the PLRA requires that available administrative remedies must be exhausted before the filing of a suit in federal court.

It is further clear that the PLRA does not require that an inmate allege or demonstrate that he has exhausted his administrative remedies.  *See **Jones**,* 549 U.S. 199.  Failure to exhaust administrative remedies is an affirmative defense—prison officials have the burden of proving that the inmate had available remedies which he did not exhaust.  *Id.* at 216 (finding that failure to exhaust is an affirmative defense that a defendant must generally plead and prove); *see also **Dale v. Lappin**,* 376 F.3d 652, 655 (7th Cir. 2004)

("Although exhaustion of administrative remedies is a precondition to a federal prisoner filing a ***Bivens*** suit . . . failure to exhaust is an affirmative defense that the defendants have the burden of pleading and proving." (citations omitted)).   This Court is not precluded, however, from considering at the outset whether an inmate has exhausted administrative remedies.   "A court may sua sponte dismiss a complaint when the alleged facts in the complaint, taken as true, prove that the inmate failed to exhaust his administrative remedies." ***Custis v. Davis***, 851 F.3d 358, 361 (4th Cir. 2017); ***Anderson v. XYZ Prison Shealth Servs.***, 407 F.3d 674, 681–82 (4th Cir. 2005); *see also* ***Banks v. Marquez***, 694 Fed. App'x 159 (4th Cir. 2017) (finding no error in the district court's decision to sua sponte dismiss petitioner's petition where petitioner explicitly admitted in his petition that he failed to exhaust his administrative remedies).

For ***Bivens*** purposes, proper exhaustion of available administrative remedies requires that "a prisoner must submit inmate complaints and appeals in the place, and at the time, the prison's administrative rules require."   ***Dale***, 376 F.3d at 655 (citations omitted); *see also* ***Woodford***, 548 U.S. at 92–94, 101–102 (finding that the PLRA exhaustion requirement requires "full and proper exhaustion," which includes meeting all the time and procedural requirements of the prison grievance system).   The Federal Bureau of Prisons ("BOP") has established an Administrative Remedy Program, 28 C.F.R. § 542.10, *et seq.*, through which an inmate may seek formal review of issues or complaints relating to confinement.   The BOP provides a four-step administrative process beginning with attempted informal resolution with prison staff (BP-8).   *See* 28 C.F.R. § 542.10, *et seq.* If the prisoner achieves no satisfaction informally, he must file a written complaint to the

warden (BP-9), within 20 calendar days of the date of the occurrence on which the complaint is based.  If an inmate is not satisfied with the warden's response, he may appeal to the regional director of the BOP (BP-10) within 20 days of the warden's response. Finally, if the prisoner has received no satisfaction, he may appeal to the Office of General Counsel (BP-11) within 30 days of the date the Regional Director signed the response.  An inmate is not deemed to have exhausted his administrative remedies until he has filed his complaint at all levels.  28 C.F.R. § 542.10–542.15; *Gibbs v. Bureau of Prison Office*, 986 F.Supp. 941, 943 (D. Md. 1997).

## DISCUSSION

Here, defendants put forth evidence that shows plaintiff did not exhaust his available administrative remedies before filing the instant *Bivens* Complaint.  A review of plaintiff's administrative remedy history shows that on May 11, 2017, USP Hazelton staff received plaintiff's administrative remedy (901666-F1) alleging staff misconduct regarding the March 20, 2017, incident.  *See* [Doc. 55-1 at 4, 15, 17].  The Warden responded to plaintiff's administrative remedy on June 19, 2017, and advised that the staff misconduct would be reviewed.  *See* [id. at 4, 19].

Plaintiff appealed the Warden's response, and on August 8, 2017, the Mid-Atlantic Regional Office received plaintiff's appeal (901666-R1).  *See* [id. at 5, 15, 23].  On October 26, 2017, the Mid-Atlantic Regional Office closed plaintiff's administrative remedy, advising plaintiff that appropriate administrative procedures were taken.  *See* [id.]  The Mid-Atlantic Regional Office also informed plaintiff that if he was "dissatisfied with this response, [he] may appeal to the General Counsel, Federal Bureau of Prisons . . . within 30 days from the

9

date of this response." [Id. at 23].

Plaintiff did not file any additional administrative remedies related to staff misconduct at USP Hazelton after filing remedy 901666-R1 and plaintiff failed to appeal administrative remedy 901666-R1 to the BOP General Counsel, as required by federal regulations and the BOP administrative grievance policy. *See* [id. at 5, 15]. Thus, it is clear plaintiff did not fully exhaust his administrative remedies, as plaintiff did not appeal his grievance to the BOP General Counsel, which is the final step required for exhaustion. *See* 28 C.F.R. § 542.10–542.15; ***Gibbs***, 986 F. Supp. at 943.

Though plaintiff argues in response that he "ha[s] filed all the administrative remedies," [Doc. 58-1 at 1], he provides no documentation of such. The only documentation plaintiff provides with his response is a form titled "Small Claims for Property Damage or Loss (31 U.S.C. § 3723)". *See* [Doc. 58-2 at 2]. This is clearly not a Form BP-11, the form on which appeals to the BOP General Counsel must be completed, and does nothing to show that plaintiff did, in fact, make an appeal to the BOP General Counsel. Additionally, none of the documents plaintiff attached to his Complaint demonstrate that an appeal to the BOP General Counsel was made. *See* [Doc. 1-1 at 1–11]. Indeed, it is impossible for plaintiff to provide any documentation showing an appeal to the BOP General Counsel was made, because it is clear from a review of plaintiff's administrative grievance history that such never happened.

Finally, this Court notes that plaintiff only argues that he did, in fact, exhaust available administrative remedies. Plaintiff does not argue administrative remedies were unavailable, nor does a review of the record reveal such to this Court. There is no evidence in the record to suggest plaintiff was prevented from or persuaded against filing

any administrative remedies.  In fact, the record reveals the administrative remedy process was clearly available to plaintiff, as he completed some of the required steps in the grievance procedure.  Thus, it is clear plaintiff understood the administrative remedy process and was able to navigate this way through it; he simply failed to complete it.  At bottom, plaintiff does not argue, nor does the record demonstrate, that there was no potential for any relief through the administrative remedy process or that plaintiff was prevented from using the grievance process through machination, misrepresentation, or intimidation.  *See Ross*, 136 S.Ct. at 1859–1860.

Accordingly, for the reasons stated above, this Court finds defendants have met their burden to prove the affirmative defense of failure to exhaust available administrative remedies.  Therefore, as the PLRA prohibits bringing unexhausted claims in court,  this Court must dismiss plaintiff's Complaint.[3]  *See Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.") (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)).

<u>CONCLUSION</u>

For the reasons set forth above, this Court hereby **GRANTS** defendants' Motion to Dismiss or for Summary Judgment **[Doc. 54]**.  Furthermore, plaintiff's "Motion to Proceed or for Summary Judgment" **[Doc. 58]** is hereby **DENIED**.  Accordingly, plaintiff's Complaint **[Doc. 1]** is hereby **DISMISSED WITHOUT PREJUDICE**.  The Clerk is **DIRECTED** to enter

---

[3] As noted above, defendants also moved to dismiss on the basis that plaintiff's claims are not cognizable in a *Bivens* suit, that plaintiff has not pled a cognizable legal claim, and that the defendants are entitled to qualified immunity.  This Court, however, need not address the merits of those arguments because plaintiff's claims are dismissed for failure to exhaust available administrative remedies pursuant to the PLRA.

judgment in favor of the defendants and to **STRIKE** this action from the active docket of this Court.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to any counsel of record herein and to mail a copy to the *pro se* plaintiff.

**DATED**: April 16, 2020.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE